UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MANUEL DE JESUS ROSARIO,

Plaintiff,

-v-

251 E. 123RD ST. REALTY, LLC; JOSE PALMA; JOSE PALMA JR., MARIA M. VALLEJOS Individually and as Trustee of THE JOSE PALMA IRREVOCABLE TRUST, and THE JOSE PALMA IRREVOCABLE TRUST,

Defendants.

---

20-cv-7387 (JSR)

MEMORANDUM ORDER

JED S. RAKOFF, U.S.D.J.

Plaintiff Manuel de Jesus Rosario seeks summary judgment on his actual and constructive fraudulent conveyance claims against defendants 251 E. 123rd St. Realty, LLC (the "Realty"), Jose Palma ("Palma Senior"), Jose Palma Jr. ("Palma Junior"), The Jose Palma Irrevocable Trust (the "Trust"); and Maria M. Vallejos, in her individual capacity and in her capacity as trustee of the Trust. Dkt. No. 19. For the reasons set forth below, the motion is granted.

**BACKGROUND**[1]

---

1 Unless otherwise noted, a standalone citation to a party's 56.1 statement indicates that the relevant underlying factual allegations are undisputed. Any citation to a party's 56.1 statement incorporates by reference the documents cited therein. Where relevant, however, the Court will cite directly to the underlying document. The Court has also deemed facts averred in a party's 56.1 statement to which the opposing party cites no admissible evidence in rebuttal as undisputed.

The underlying facts are straightforward and undisputed. On August 3, 2015, plaintiff brought suit for unpaid wages against, among others, defendants the Realty, Palma Senior, and Palma Junior. Pl. 56.1, Dkt. No. 19-1, ¶ 1 (the "Wage Action"). Palma Senior is the father of Palma Junior and the sole member of the Realty. Id. ¶ 2. At the time of the filing of the Wage Action, the building located at 251 E. 123rd Street, New York, NY 10035 (the "Building") was owned by the Realty. Id. ¶ 2. On March 3, 2020, after a jury trial, the Court entered judgment for plaintiff in the amount of $89,670.35. Id. ¶ 5. On March 12, 2020, the Court issued an attachment against the Building. See 15-cv-6049, Dkt. No. 166. A second judgment, for attorneys' fees and costs, was entered on August 25, 2020 in the amount of $153,536.76. Pl. 56-1 ¶ 6. Neither judgment has been satisfied. Id. ¶ 7.

According to the defendants, Palma Senior began creating a family trust around 2016 or 2017, purportedly as part of an estate planning process after he was diagnosed with a heart condition. Pl. 56.1 ¶ 16. In 2019, Palma Senior created the Trust. Id. ¶ 8. He named his sister -- Maria M. Vallejos -- the trustee. Dkt. No. 20-6 ("Palma Junior Decl."), at 12:8-10. And he named his four children, including Palma Junior, the beneficiaries of the Trust. Pl. 56-1 ¶ 54.

On September 1, 2020, a deed dated January 28, 2020 (the "January Deed") was filed, purporting to transfer the Building from the Realty to "Maria M. Vallejos as Trustee of the Trust." Id. ¶ 26. Shortly before the January Deed was executed, Vallejos executed a power of attorney, naming her nephew Palma Junior as her agent for various matters relating to the Building. Id. ¶ 21. In a property report executed along with the transfer, Palma Junior represented that the Building had a total assessed value of $629,100. Id. ¶ 32. The Realty, however, received no consideration for the Building, and it was rendered insolvent by the transaction. Id. ¶¶ 33, 37.

On September 10, 2020, plaintiff brought the instant action, alleging that the transfer was a fraudulent conveyance. Dkt. No. 1.[2],[3]. Over the course of this litigation, defendants appear to

---

[2] Plaintiff sought sanctions in the Wage Action on the ground that the transfer violated the attachment order, but the Court denied the motion without prejudice because the defendants represented that they had transferred the building before the attachment order was issued and that they were unsure why the January Deed was only filed in September 2020. See 15-cv-6049, Dkt. No. 204.

[3] A quick word about subject matter jurisdiction is in order. Although there is no diversity between the parties, the complaint invokes the Court's "ancillary jurisdiction to enforce its judgments, insofar as it involves claims that form part of the same case and controversy as the civil action designated 15-CV-6049 where judgment has been entered." Compl., Dkt. No. 1, ¶ 8. "Under the doctrine of ancillary jurisdiction, a federal court may

have tried to undo the transaction. On November 23, 2020, the defendants filed a second deed (the "November Deed"), purporting to transfer the Building back from the Trust to the Realty. Id. ¶ 47. The November Deed, however, indicated that it was executed by Palma Senior, not by Vallejos (the trustee) or Palma Junior (the agent of Vallejos). Id. ¶ 48. The defendants insist that the November Deed contained a typographical error and that Palma Junior actually executed the November Deed. See Def. Mem., Dkt. No. 24, at 11. The defendants purportedly sought to remedy this mistake by executing a third deed on May 6, 2021 (the "May Deed"), which appears to have been executed by Palma Junior in his capacity as "attorney in fact" for Valejos. Dkt. No. 22-2.

**LEGAL STANDARD**

---

exercise jurisdiction over a claim for which no subject matter jurisdiction independently obtains if the claim is sufficiently related to an initial claim properly before the court." Chesley v. Union Carbide Corp., 927 F.2d 60, 64 (2d Cir. 1991). The law is clear, and the parties do not dispute, that this Court, in the service of enforcing its earlier judgments, has ancillary jurisdiction over the core of this action, which calls upon it to resolve plaintiff's claim that the transfer was a fraudulent conveyance. See Epperson v. Entm't Express, Inc., 242 F.3d 100, 104-107 (2d Cir. 2001) (action to void an allegedly fraudulent conveyance by a judgment debtor fell within federal district court's ancillary jurisdiction to enforce its own judgments so long as the action runs against the original judgment debtor, and does not seek to impose liability for that judgment on a new party).

Plaintiff now seeks summary judgment. Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Though courts "constru[e] the evidence in the light most favorable to the nonmoving party," LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 205 (2d Cir. 2005), the moving party must prevail "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).[4]

**DISCUSSION**

New York law, as here applicable, defines two different types of conveyances that can be set aside by creditors based on their fraudulent nature: constructive fraudulent conveyances and intentional fraudulent conveyances. Kim v. Ji Sung Yoo, 311 F. Supp. 3d 598, 611 (S.D.N.Y. 2018), aff'd sub nom. Tae H. Kim v. Ji Sung Yoo, 776 Fed. App'x 16 (2d Cir. 2019). As relevant here, DCL §§ 273 and 273-a address constructive fraudulent conveyances,

4 Unless otherwise indicated, in quoting cases all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

while DCL § 276 addresses actual fraudulent conveyances. Plaintiff brings claims under all three sections.[5]

# I. Liability

## A. Constructive Fraudulent Conveyance

The DCL contains various sorts of "constructive" fraudulent conveyance claims. As relevant here, DCL § 273 concerns transfers made by an insolvent transferor, whereas § 273-a concerns transfers made by a defendant. Plaintiff brings claims under both sections.

A conveyance is deemed constructively fraudulent under DCL § 273 only if "two separate elements are satisfied: first, it is made without fair consideration, and second, the transferor is insolvent or will be rendered insolvent by the transfer in question." United States v. Watts, 786 F.3d 152, 164 (2d Cir. 2015).[6] A debtor has received "fair consideration" if the following three elements are satisfied: "first, the recipient of the debtor's

---

5 On December 6, 2019, the New York legislature repealed and replaced DCL §§ 273, 273-a, and 276. See 2019 N.Y. Sess. Laws ch. 580. Those sections are operative here, however, because the new law does "not apply to a transfer made or obligation incurred before [the act's] effective date, [April 4, 2020], nor shall it apply to a right of action that has accrued before such effective date." Id.; see Ray v. Ray, 799 Fed. App'x 29, 31 n.1 (2d Cir. 2020) (summary order).

6 Section 273 provides that "every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

property must either convey property in exchange or discharge an antecedent debt in exchange; second, such exchange must be a fair equivalent of the property received; and third, such exchange must be in good faith." Id. "[T]he element of insolvency is presumed when a conveyance is made without fair consideration, and the burden of overcoming such presumption is on the transferee." Id. at 165. Similarly, "[t]o prevail on a claim under DCL § 273-a, a plaintiff must establish (1) that the conveyance was made without fair consideration; (2) that the conveyor is a defendant in an action for money damages or that a judgment in such action has been docketed against him; and (3) that the defendant has failed to satisfy the judgment." Grace v. Bank Leumi Tr. Co. of N.Y., 443 F.3d 180, 188 (2d Cir. 2006).[7]

Plaintiff is entitled to summary judgment on his constructive fraudulent conveyance claims. As to the § 273 claim, there is no dispute that the transfer was made without consideration and that it left the Realty insolvent. See Def. 56.1, Dkt. No. 25, ¶ 37 (admitting that the "Realty was rendered insolvent by the January

---

7 DCL § 273-a provides that "[e]very conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment."

28, 2020 transfer"; id. ¶ 33 (admitting that the "Realty received no consideration of any kind for the purported transfer to the Trust"). Likewise, as to the § 273-a claim, there is no dispute that the conveyance was made without consideration, that the Realty was a defendant in an action for money damages at the time of the conveyance, and that the defendants have failed to satisfy the judgments.

The defendants offer various counterarguments, but none is persuasive. First, the defendants contend that plaintiff was not a "creditor" of the Realty at the time of the transfer because the transfer occurred before the judgments were entered in the Wage Action. Def. Mem. at 9. But the DCL defines "creditor" broadly to include any "person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." DCL § 270. Accordingly, "it is now accepted that in tort cases the relationship of debtor and creditor arises the moment the cause of action accrues." Matter of Shelly v Doe, 249 A.D.2d 756, 757 (3d Dep't 1998). Because the transfer occurred after plaintiff's cause of action against the defendants accrued -- indeed, after the litigation had already begun -- plaintiff was a "creditor" under the DCL at the time of the transfer.

The defendants also contend that plaintiff failed to establish that the transfer rendered all of the defendants

insolvent. Def. Mem. at 10. Relatedly, the defendants argue that plaintiff has failed to establish "prejudice" because there is no showing that he could not enforce his judgments against the other defendants, all of whom are jointly and severally liable for the judgments. Id. But the defendants cite no authority for either proposition, and the Court holds that a fraudulent conveyance claim requires no such showing.

Finally, the defendants contend that, at the time plaintiff sought to enforce his judgments, the Building had already been transferred back from the Trust to the Realty. Def. Mem. at 10. The November Deed, however, appears to have been rejected. See Pl. Reply, Dkt. No. 26, at 6. Nor is there any evidence that the May Deed is valid. These questions, in any event, are immaterial to the defendants' liability, since a fraudulent conveyance occurs once the wrongful transfer is completed. Thus, although whether the transfer has been unwound might inform the sort of remedy available to plaintiff, it does not bear on the defendants' liability. See In re Kovler, 253 B.R. 592, 596-600 (S.D.N.Y. Br. 2000) ("The unilateral act of the defendants in voluntarily reconveying moots one form of relief provided by the statute, but not the other."). The Court addresses appropriate remedies below.

**B. Actual Fraudulent Conveyance**

DCL § 276 provides: "A conveyance may be avoided on the basis of actual fraud if the . . . actual intent to hinder, delay, or defraud present and future creditors is established." A creditor can prove the relevant intent from the facts and circumstances surrounding the transfer. See Kim, 311 F. Supp. at 612; S.E.C. v. Smith, 646 Fed. App'x 42, 45 (2d. Cir. 2016) (summary order). Courts refer to the badges of fraud commonly associated with fraudulent transfers that give rise to the inference of intent. These badges include: "(1) a close relationship between the parties to the transaction; (2) a questionable transfer not in the ordinary course of business; (3) inadequacy of consideration; (4) the transferor's knowledge of the creditor's claim and his inability to pay it; and (5) retention of control of the property by the transferor after the conveyance." RTC Mortg. Trust 1995-S/N1 v. Sopher, 171 F. Supp. 2d 192, 201 (S.D.N.Y. 2001).

Plaintiff is entitled to summary judgment on his actual fraudulent conveyance claim. Virtually every badge of fraud is present in this case. First, there is a close relationship between the Realty and the Trust. The sole member of the Realty -- Palma Senior -- is also the settlor of the Trust; moreover, Palma Senior's children are the beneficiary of the Trust and his sister is the trustee. Second, the transfer of the Realty's only asset was not in the ordinary course of its business. Third, the Trust

provided no consideration to the Realty for the Building. Fourth, at the time of the transfer, all of the defendants had knowledge of plaintiff's ongoing lawsuit. Fifth, the Realty effectively retained control of the Building after the conveyance, as the tenants of the Building were not informed of the transfer and continued to pay rent to the Realty. Pl. 56-1 ¶¶ 38, 39, 46.

In response, defendants assert in conclusory fashion that "no badges of fraud are extant in this case." Def. Mem. at 8. They also appear to suggest that they transferred the Building to the Trust "in good faith because [Palma Senior] was severely ill." Def. 56.1 at 11. But Palma Senior first became ill around 2016 or 2017, whereas the transfer was not effectuated until January 28, 2020 -- just eight days before trial commenced in the Wage Action. Pl. 56-1 ¶ 31.

Given these undisputed badges of fraud, a reasonable jury could only find that the transfer was made with "actual intent" to "hinder, delay, or defraud" plaintiff for the purposes of § 276.

## II. Remedy

Having found that plaintiff is entitled to summary judgment on all of his claims, the Court turns to the appropriate remedy. Section 278 of the DCL describes the rights available to a creditor as to whom a conveyance is fraudulent. Section 278 provides, in relevant part, that:

> Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser,
>
> a. Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or
>
> b. Disregard the conveyance and attach or levy execution upon the property conveyed.

Id. § 278(1). The DCL makes no express provision for the recovery of money damages. Courts have recognized, however, that an implied right of action for damages exists where "the traditional fraudulent conveyance remedy of rescission is no longer practicable" - such as, for example, when the transferred assets have been sold or commingled with other assets. In re Adelphia Recovery Trust, 634 F.3d 678, 692-693 (2d Cir. 2011) (collecting cases).

As discussed, plaintiff is entitled to summary judgment on his fraudulent conveyance claims. Accordingly, the Court will set aside the transfer to satisfy plaintiff's claim. The defendants suggest that the May Deed -- which purportedly reconveyed the Building back from the Trust to the Realty -- moots this sort of equitable relief. The Court disagrees. There is no evidence in the record that the beneficiaries of the Trust consented to transferring the Building out of the Trust, or even whether their

consent was required. Absent such evidence, the Court cannot conclude that this form of relief is moot. Indeed, considering that the defendants have apparently twice tried to unwind the transaction, they should welcome the Court's help in doing so.

The Court will not, however, issue an attachment order because the Court already issued such an attachment order against the Building in connection with the Wage Action. Likewise, the Court will not award any damages because rescission is still practicable.

As for attorneys' fees, § 276-a states that attorneys' fees should be awarded when a conveyance "is found to have been made by the debtor and received by the transferee with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors." "Thus, before awarding attorneys' fees against a defendant, whether he be the debtor or the transferee, the court must make an explicit finding of actual intent to defraud; imputed fraud does not satisfy § 276-a." Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991). In Carey, the Second Circuit upheld a finding of actual intent to defraud where: (1) the transfer of the property was intrafamily; (2) the transfer involved only "nominal consideration"; (3) there was evidence that no consideration was paid; and (4) the debtor "knew of the potential claim against him when he transferred the property." Id.

Plaintiff is entitled to reasonable attorneys' fees against the Realty, Palma Junior, and Palma Senior. It is undisputed that the transfer was intrafamily, without consideration, and each defendant knew of the ongoing lawsuit at the time of the transfer.[8] The Court will refer the matter to the designated magistrate judge for an inquest on the proper amount of attorneys' fees.

**CONCLUSION**

In sum, the Court grants plaintiff's motion for summary judgment. Specifically, the Court holds that a reasonable jury could only find that the transfer was a fraudulent conveyance under DCL §§ 273, 273-a, and 276; and sets aside the transfer of the Building from the Realty to the Trust as a fraudulent conveyance. Plaintiff shall submit a proposed judgment consistent with, and not exceeding the scope of, this Order by June 4, 2021 at 5:00 p.m.

---

8 Plaintiff does not seek attorneys' fees as against the Trust or Vallejos because of the "potential limitations" on the Court's subject matter jurisdiction. Pl. Mem., Dkt. No. 21, at 12 n.4 As Judge Engelmayer has observed, it appears to be an open question whether a court's "ancillary enforcement jurisdiction over a fraudulent conveyance case brought under DCL § 276 extends to determining whether transferees of the fraudulent conveyance who were not liable under the original Judgment (nor parties to that original action) are liable for attorneys' fees under DCL § 276-a." Priestly v. Panmedix Inc., 18 F. Supp. 3d 486, 496 (S.D.N.Y. 2014). The Court need not reach this issue because plaintiff does not seek attorneys' fees against these defendants.

In addition, the Court will award reasonable attorneys' fees against Palma Senior, Palma Junior, and the Trust, in an amount to be determined by the designated magistrate judge's inquest. Following resolution of the plaintiff's attorneys' fees, the Court will direct the Clerk to close the case.

SO ORDERED.

Dated: New York, NY
May 27, 2021

JED S. RAKOFF, U.S.D.J.